# Netter et al. v. Scholtz, Mayor, et al.

March 22, 1940.

William H. Field, Judge.

Attkisson & Attkisson for appellants.

Hal O. Williams, Lawrence S. Poston, Joseph G. Sachs, Luther M. Roberts and Robert E. Grubbs for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

This and the case of Joseph Hartman et al. v. City of Louisville, 282 Ky. 487, 138 S. W. (2d) 948, have been consolidated and heard together on appeal. While the same ordinance is involved in each, they present entirely different questions, were heard before different judges below, and therefore have been treated in separate opinions.

The Hartman case called in question the constitutionality of what is known as the "Wholesale Fruit and Vegetable Ordinance" adopted by the city of Louisville on March 23, 1937, but in this case, A. Netter and a number of other wholesale produce dealers, assuming the constitutionality of the ordinance, have by pleading and proof attempted to bring themselves within the classification of established dealers as defined therein

rather than as non-established dealers as claimed by the city. Under the ordinance, an established dealer is required to pay a license fee of $100 per annum and a non-established dealer is required to pay a license fee of $250 per annum. Appellants allege that they had tendered and offered to pay the $100 license fee and requested that a license be issued to them as established dealers but that the city authorities had refused to accept such sum or to issue the license as requested. They prayed for a writ of mandamus directing the city authorities to issue each of them a license as an established dealer within the meaning of the ordinance upon payment by them of the sum of $100.

On final hearing the motion for writ of mandamus was denied and it was adjudged that each of appellants is a non-established wholesale dealer in produce and that each be required to pay a license fee of $250 before engaging in business as such in the city of Louisville. This appeal followed.

The pertinent portion of the ordinance reads:

"1. An 'Established dealer is defined as one who occupies as owner or tenant, a regularly established building, store, or warehouse, for the purpose of wholesale merchandising, any or all of the aforementioned food products, which room or building is equipped with refrigeration facilities, or other equipment ordinarily used in the wholesale produce business, and,

"(a) who has been a bona fide resident of the City of Louisville, Kentucky, for more than one year next before the application for license, or,

"(b) who was regularly engaged in said business in the City of Louisville, prior to the first day of September preceding the application for license, and has been regularly assessed for City ad valorem taxes on stock of merchandise and other assets used in said business.

"II. All other wholesale produce dealers shall be classified as 'Non-established Dealers'."

Appellants are contending here, as they did below, that they come within the classification of established

dealers as defined in the quoted portion of the ordinance. Appellees, of course, hold to the contrary view.

By proof and stipulations it appears that each of appellants has been a bona fide resident of the city of Louisville for more than one year next before application for license and that they have regularly engaged in wholesale produce business in Louisville prior to the first day of September preceding the application for license. So the question remaining to be determined is whether they otherwise bring themselves in the class of established wholesale produce dealers as defined in the ordinance. The evidence shows that appellants rent or lease space in the Hay Market in Louisville. The Hay Market consists of several acres with concrete floors, driveways, and stalls or booths. It is covered by a metal roof supported by steel posts or columns and by steel girders or framework but is not enclosed by walls nor supplied with heating or refrigerating plants, although apparently there are some facilities for icing produce. It is argued by appellants that the leased stalls in the Hay Market where they store their produce and sell it are buildings within the meaning of the ordinance. They cite Concord v. Morgan, 74 N. H. 32, 64 A. 725, holding that a structure consisting of roof supported by posts is a building, and McGalliard v. Chapman, 129 A. 256, 3 N. J. Misc. 609, holding that a wayside produce stand is a building. The former, as we note, involved an ordinance concerning fire hazards and attempted to regulate or prohibit specified uses of buildings that would constitute a hazard. It was held that the structure in question was a building within the meaning of the ordinance. The latter case had for consideration a restriction in a deed against erecting any dwelling house or other building within a certain distance of a street. The structure complained of consisted of posts set in the ground connected at the top with stringers or girders and covered by a roof supported by rafters and boards. It was held in effect that this came within the classification of structures prohibited by the deed.

From an examination of other authorities we find that the word building in a restrictive covenant intended to restrain obstruction of a view would include any structure having that effect. Curtis v. Schmidt, 212 Iowa

1279, 237 N. W. 463, and this would also be true in case of a restriction requiring buildings to be a certain distance from the property line of lots. Bagiano v. Harrow, 247 Mich. 481, 226 N. W. 262; Kelly v. Carpenter, 245 Mich. 406, 222 N. W. 714.

The more restricted meaning of the word building as ordinarily used and understood is a structure enclosing space within walls and roof. Small v. Parkway Auto Supply, 258 Mass. 30, 154 N. E. 521, 49 A. L. R. 1361; Nowell v. Boston Academy of Notre Dame, 130 Mass. 209. However, in its broadest sense it may include any character of structure according to the connection in which it is used and the purpose sought to be effected by its use. Addison County v. Blackmer, 101 Vt. 384, 143 A. 700; Lanier v. Lovett, 25 Ariz. 54, 213 P. 391. An analysis of the cases bearing on the question will reveal that the marked tendency of courts in construing the word building as used in legislative acts, municipal ordinances, restrictive covenants, etc., is to give effect to the intent and purpose of the act, ordinance, or instrument and in so doing to extend the meaning of the term to cover structures that ordinarily would not fall within the strict definition of the word. See Annotations following Small v. Parkway Auto Supply in 49 A. L. R. beginning at page 1364.

When the purpose and intent of the ordinance is taken into consideration it is quite manifest that the word building was used in the quoted portion of the ordinance in its most restricted sense and was not intended to include stalls and open booths. It is our conclusion that the chancellor properly refused to extend or broaden its meaning so as to cover stalls in the Hay Market and appellants, for this and other reasons that might be assigned, failed to bring themselves within the classification entitling them to license as established dealers.

Judgment affirmed.